UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| WENDEE R. NEWMAN (Social Security No. XXX-XX-9908), | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 3:12-cv-94-WGH-RLY |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | ) ) ) ) ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, pursuant to the parties= consents and an Order of Reference entered October 3, 2012. (Docket No. 11). Briefing is now complete. (Docket Nos. 15, 16). An oral argument was conducted at 9:30 a.m., on February 19, 2013.

Plaintiff, Wendee R. Newman ("Ms. Newman"), was, at the time of her alleged onset date of July 1, 2007, a 36 year old female with at least a high school education. (R. 8, 19). She alleges disability due to bipolar disorder; the

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is automatically substituted as the Defendant in this suit.

ALJ also found that she had the following severe impairments: generalized anxiety disorder, depression, and anorexia. (R. 10). Ms. Newman's application was denied initially and upon reconsideration. (R. 75-78, 82-92). An administrative law judge ("ALJ") held a hearing on October 5, 2011, at which Ms. Newman, her husband ("Mr. Newman"), and a vocational expert ("VE") testified. On November 9, 2011, the ALJ issued an opinion finding Ms. Newman not to be disabled. (R. 22). The Appeals Council denied Ms. Newman's request for review on May 24, 2012 (R. 1-3), making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). 20 C.F.R. §§ 404.955(a), 404.981. As a final decision, jurisdiction is proper in this court. 42 U.S.C. § 405(g).

## Record and Medical Evidence

The court finds that the ALJ's decision accurately and completely describes the record and medical evidence, and incorporates those sections (R. 12-19) by reference.

## Findings

In her brief and arguments, Ms. Newman has raised the following issues:

1. Did the ALJ err in giving little weight to her testimony and that of Mr. Newman at the hearing?

    2.  Did the ALJ violate the treating physician rule in her consideration of Jerry L. Like, D.O.=s opinion?

    3.  Did the ALJ violate 20 C.F.R. § 404.1527(d)(1) in her evaluation of Robert L. Wilson, Ed.D?

    4.  Did the ALJ improperly consider the VE's testimony?

**Issue 1:**    **Did the ALJ err in giving little weight to Ms. Newman's testimony and that of her husband at the hearing?**

In this case, the ALJ obtained testimony from Ms. Newman and Mr. Newman at the hearing. (R. 34-65). The ALJ discussed in detail Ms. Newman=s history, which included a severe episode of decomposition in October 2007. (R. 14). The ALJ correctly noted the improvement that Plaintiff experienced between 2008 and 2010 and concluded that Ms. Newman=s medications and therapy had been beneficial. (R. 18). The ALJ determined that:

> [r]egardless, for over two years now, the claimant has not received any psychological or psychiatric care, despite her progress while in counseling; instead she has relied on the care of her primary care physician, Dr. Like. Thus, even if I find the claimant=s impairments could be expected to produce the alleged symptoms, the intensity of them is not consistent with the totality of the medical evidence.

(R. 18). In her opinion, the ALJ reviewed Mr. and Ms. Newman's respective testimony and indicated that Ms. Newman=s impairments "could reasonably be expected to cause the alleged symptoms." (R. 13). However, she found that Ms. Newman=s statements concerning the "intensity, persistence and limiting

effects of [her] symptoms not credible to the extent they are inconsistent with the above residual functional capacity ["RFC"] assessment." (R. 13).[1] The ALJ stated that Mr. Newman's testimony was essentially a reiteration of Ms. Newman's statements, "and because Mr. Newman remains emotionally invested in the claimant's situation," she assigned only some weight to his testimony. (R. 13).

The ALJ=s conclusion discounting Ms. Newman's statements was followed by an extensive evaluation of Ms. Newman's medical treatment (R. 13-18), and she noted many inconsistencies between Ms. Newman's statements and the record evidence. (R. 18). The ALJ=s determination of Ms. Newman=s credibility is supported by substantial evidence in the record, and we can trace the path of the ALJ=s reasoning. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Since Mr. Newman's testimony largely mirrored Ms. Newman's, the ALJ's discounting of his testimony was reasonable and supported by the same evidence supporting the ALJ's decision to discount Ms. Newman's testimony. Therefore, the ALJ's credibility determinations must be affirmed.

---

[1] This analysis satisfied the two-step credibility determination an ALJ must make regarding a claimant's statements. *See Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004) (quoting SSR 96-7p). The court notes that this language has been criticized as "meaningless boilerplate" and for reversing the analytical process by seemingly assessing a claimant's RFC before evaluating to what extent her statements are credible. *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012). However, the Defendant does not challenge the ALJ's credibility determination on those grounds. Moreover, as discussed *infra*, the ALJ explained which of Ms. Newman's statements the ALJ did not find credible. This "provided a sufficient basis for [the ALJ's] credibility assessment," *Richison v. Astrue*, 462 Fed. App'x 622, 625-26, and the ALJ's use of the boilerplate language is harmless error.

**Issue 2: Did the ALJ violate the treating physician rule with respect to the consideration of Dr. Like=s evidence?**

Ms. Newman claims that the ALJ gave no weight to the opinion of Dr. Like, her physician since at least September 2008. (R. 387). In doing so, she opines, the ALJ violated the treating physician rule.[2] 20 C.F.R. § 404.1527(d).[3] The pertinent part of the ALJ's decision is as follows:

> Dr. Like determined on October 3, 2011 that the claimant would be unable to drive, work with machines, and work under stressful conditions. In fact, Dr. Like provided that he felt that the claimant was Atotally disabled at this time.@ (14F/1). I give Dr. Like=s opinion little weight in this case. Dr. Like is a family practitioner without a specialty in psychology or psychiatry. Additionally, this conclusion is inconsistent with the claimant=s own testimony that she is able to drive and perform a full range of activity of daily living while taking her medications. Concerning his opinion that the claimant is Atotally disabled at this time,@ this portion of his opinion is given no weight in this case because disability is a determination reserved to the Social Security Administration Commissioner or one of his designees.

---

[2] The treating physician rule states that an opinion from a treating physician is to be given controlling weight if it is well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2). If it is not entitled to controlling weight, the ALJ must evaluate several additional factors in determining how much weight to give the treating physician. 20 C.F.R. § 404.1527(d).

[3] After the ALJ issued her decision, 20 C.F.R. § 404.1527(c) was removed from the Code of Federal Regulations, and subsections (d), (e), and (f) became (c), (d), and (e), respectively. This opinion cites the regulations as they existed when the ALJ made her decision.

(R. 19). Ms. Newman's characterization of the ALJ's treatment of Dr. Like's opinion is mistaken. As is clear above, the ALJ gave Dr. Like's opinion little, rather than no, weight as it pertained to Ms. Newman's restrictions. The ALJ concluded that Dr. Like's opinion that Ms. Newman was "unable to drive, work with machines, and work under stressful conditions" (R. 425) was inconsistent with Ms. Newman's own testimony that she could drive. (R. 48). It is also inconsistent with Ms. Newman performing functions, including working at a Subway restaurant Mr. Newman owned and home schooling her children during that time period, that go beyond simple daily activities.[4] (R. 35, 42). This lack of external consistency is a valid reason for giving Dr. Like's opinion little weight. 20 C.F.R. § 404.1527(d)(4). The fact that the ALJ gave no weight to the opinion of Dr. Like that Ms. Newman was "totally disabled at this time," is not an error of law. In fact, the Social Security Administration specifically reserves the finding of disability to the Commissioner. 20 C.F.R. 404.1527(e)(1). There is no error requiring reversal or remand arising from this issue.

**Issue 3:     Did the ALJ violate that same regulation with respect to Dr. Wilson's evidence?**

Robert L. Wilson, Ed.D, is a Clinical Psychologist who conducted a consultative examination on July 21, 2010, based on a referral from the

---

[4] These activities would not be considered household chores or simple activities of daily living, and unlike in *Hughes v. Astrue*, 2013 WL 163477, at *3 (7th Cir. Jan. 16, 2013), the court finds the ALJ reasonably evaluated Ms. Newman's activities against Dr. Like's opinion that she had completely disabling limitations.

Indiana Disability Determination Bureau ("DDB"). (R. 396). Dr. Wilson took a history and conducted a mental status examination (R. 396-400) and concluded that Ms. Newman

> apparently experiences episodic depression in which [she] withdraws from her family and friends, has less energy, [and] feels tired and unmotivated to take care of typical daily activities. Ms. Newman thinks she has panic attacks, but she was unable to fully describe them. She said she gets dizzy and passes out.

(R. 399). Dr. Wilson diagnosed Ms. Newman with "Bipolar I Disorder, Most Recent Episode Mixed, Severe Without Psychotic Features," "Generalized Anxiety Disorder," and "Anorexia, Restricting Type." (R. 399). He assessed her Global Assessment of Functioning score ("GAF") to be 50 (R. 399), indicating that she experienced serious symptoms.[5] Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32. This report did not specifically include an opinion as to whether Dr. Wilson believed Ms. Newman was disabled.

Fourteen months later, on September 25, 2011, at the request of Ms. Newman's representative, Dr. Wilson conducted a "clinical interview" with Ms. Newman and Mr. Newman. (R. at 421). Dr. Wilson concluded that "[f]rom a clinical perspective, I think Wendee's symptoms place her at

---

[5] The court notes that a person with a GAF of 50 is on the upper end of the range between 41-50 that includes "unable to keep a job" as a consequence of low functioning, and the lower end of a range between 51-60 that includes "moderate symptoms," which in turn indicates "moderate difficulty in occupational functioning." DSM-IV 32.

7

significant risk in obtaining and sustaining employment.@ (R. 423). He further stated:

> As you know, I also conducted a mental status examination of Wendee about one year ago for the Indiana Disability Determination Bureau. There seems to be virtually no change in her mental status during this time frame that I can determine. I was unable to elicit evidence of manic episodes. Severe depression seems to be the dominant clinical issue.
>
> I do not think psychotropic medications alone are sufficient therapy for her. The standard for practice is to treat major depressive disorders with medications plus psychotherapy. Wendee is not under the care of a psychotherapist. Although she is reluctant to invest herself in psychotherapy, primarily because of fear and anxiety, I think if she found >just the right fit= with a therapist she would do so. As I understand the family situation, however, Joe is self-employed and does not have the insurance benefits covering mental health services, thus Wendee is unable to afford therapy. The therapy she requires will be long-term, and this seems to be impossible. I think without the combination of psychotherapy and medication, the prognosis for Wendee=s improvement is very poor. Wendee=s depressed mood, anergia, amotivation, irritability and anger, and especially her ability to focus and concentrate on tasks at hand are major obstacles to her productivity.

(R. 423-24).

The ALJ afforded Dr. Wilson=s opinion Alittle weight@ in this case because Dr. Wilson, despite providing for these limitations, also concluded that there seemed to be Avirtually no change in her mental status@ (R. 423) between Dr. Wilson=s July 2010 examination, when he did not explicitly conclude that Ms. Newman could not work, and his September 2011 interview with her. (R. 18). The ALJ discounted the September 2011 opinion because it was not based on any additional standard diagnostic testing and because ADr. Wilson seems to

have uncritically relied upon the claimant=s objective complaints.  Finally, it is important to note that, for purpose of this particular decision, Dr. Wilson was hired by the claimant=s representative and not by the Social Security Administration.@[6]  (R. 18).

Instead of relying on Dr. Wilson=s consulting report, the ALJ gave Agreat weight@ to the DDB mental health consultants, Stacia Hill, Ph.D., and B. Randal Horton, Psy.D., because Athey are consistent with the record as a whole after complete and thorough reviews of that record.@  (R. 18).  This court=s review of the opinion of Dr. Hill and the affirmation by Dr. Horton finds that those opinions are based almost entirely on Dr. Wilson=s July 2010 examination.  There is no indication from either of the reviewers' opinions that they review any other documents besides Dr. Wilson=s July 2010 letter.  (*See* R. 417, 419).  Although records appear to be present from Jerry L. Like, D.O., there is no specific reference to those records made by the examiners.[7]

Although it is an exceptionally close call, the court concludes that the ALJ was entitled to give Dr. Wilson=s opinion Alittle weight@ because this second opinion was, in fact, not based on any additional standard diagnostic testing and

---

[6] The court expresses concern that the ALJ thought it was "important to note" that Dr. Wilson's September 2011 opinion was solicited by Ms. Newman.  This language implies that the ALJ was inclined to discount Dr. Wilson's opinion as biased due to Ms. Newman's solicitation.  The court notes that who solicited or paid for a medical opinion is not a listed factor to be considered in evaluating a medical source opinion.  20 C.F.R. § 404.1527(d).  To allow this would call into question any DDB opinions paid for by the Commissioner.

[7] Nevertheless, Dr. Like=s records do reflect that Ms. Newman=s condition is described as Abipolar disorder B controlled.@  (R. 387).

was obtained by relying upon Ms. Newman=s subjective complaints at that time. The findings of Dr. Wilson's July 2010 report were incorporated by reference into the September 2011 examination, and the ALJ's conclusion that he did not indicate in the July 2010 report that Ms. Newman was incapable of working is not an unreasonable reading of Dr. Wilson's report. In order for this court to reject the ALJ=s conclusion with respect to Dr. Wilson=s opinion, this court would have to substitute it=s own judgment for that of the ALJ in determining the weight to be given to Dr. Wilson=s report. This we cannot do. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

**Issue 4:     Did the ALJ improperly consider the VE=s testimony?**

Ms. Newman argues that her work at Mr. Newman's Subway restaurant was sheltered work, not substantial gainful activity (Pl's Brief at 8), and therefore the ALJ erred in including the job of sandwich maker in the hypothetical questions posed to the VE. Ms. Newman argues that this inclusion renders the VE's testimony (R. 67-69) erroneous. However, our reading of the testimony establishes that the VE ruled out Ms. Newman's ability to perform her past relevant work as a sandwich maker. (R. 69).[8] The ALJ did not find that Ms. Newman could perform her past relevant work. (R. 20). Rather, the ALJ concluded there were other jobs listed by the VE that Ms. Newman could

---

[8] The VE's answer is as follows: "Well, the past work as a sandwich maker was medium and unskilled. . . . But there are times when there is heavy traffic coming and going, and that kind of restaurant, where I believe that would be demanding enough it is probably going to rule it out." (R. 69).

perform given her condition as supported by the medical record evidence.  *See Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).  The VE finding significant jobs available to Ms. Newman does constitute substantial evidence enabling the Commissioner to meet her burden of establishing that there are jobs in the economy which Ms. Newman can perform.

## Conclusion

The ALJ did not err in granting only some credence to Ms. Newman and Mr. Newman's descriptions of the extent of her impairments during the time periods Ms. Newman was limited by her bipolar condition.  The ALJ gave appropriate weight to Dr. Like=s opinion, and her discounting of Dr. Wilson's opinion was supported by substantial evidence and not in error.  Finally, there is no error in the ALJ's treatment of the VE's opinion.  For these reasons, the decision of the Commissioner must be **AFFIRMED** in this case, and this case must be **DISMISSED**.

Ms. Newman experienced a very difficult time in her life in 2007, when she was greatly affected by her mental condition.  However, she did experience some improvement with medication and therapy.  Another ALJ might have read the opinion of Dr. Wilson more liberally in favor of Ms. Newman, and/or could have given that opinion greater weight.  Whether Ms. Newman is—or was for a period of time—disabled is a close call.  However, we can find no error of law present in the opinion, and we are not allowed to substitute our own judgment for that of

the ALJ, who was faced with a difficult task.  We encourage Ms. Newman to continue to seek therapy.

      **SO ORDERED** the 4th day of March, 2013.

                                            William G. Hussmann, Jr.
                                            United States Magistrate Judge
                                            Southern District of Indiana

**Served electronically on all ECF-registered counsel of record.**